When confronted with a stacked deck, the majority refuse to allow a re-deal.
Section 97-87 of the North Carolina General Statutes mandates the Full Commission, when proper notice has been given, "to review the award (of a Deputy Commissioner), and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award."
Under the facts of this matter, in my view the Deputy Commissioner and the majority of the reviewing panel of the Full Commission have committed a manifest abuse of discretion by failing to grant plaintiff's motion to admit the testimony and exhibits of Dr. Paul Suh, MD.
Dr. Suh first treated the plaintiff on March 19, 2001, just 48 days after the hearing of the case and more than a month before the record was closed by the Deputy Commissioner. The trial division of the Industrial Commission routinely allows medical depositions to be noticed within 60 days of the hearing before the Deputy Commissioner and many depositions are completed long after 60 days of the hearing. The Deputy Commissioner did not enter her Opinion and Award until January 29, 2002, some 10 months after Dr. Suh began treating plaintiff.
Plaintiff asked leave of the Deputy Commissioner before the record wasclosed to take the deposition of Dr. Suh. Plaintiff's counsel noticed the deposition of Dr. Suh on March 23, 2001, 11 days before the record was to close. Defendants moved for a protective order precluding plaintiff from deposing Dr. Suh and introducing his medical records into evidence. The Deputy Commissioner granted the protective order and closed the record without Dr. Suh's deposition and medical records on May 3, 2001.
This case was a denied case and defendants therefore did not have the right to direct medical care. They had no right to complain when plaintiff sought treatment from Dr. Suh. Having treated plaintiff before the record was closed, Dr. Suh's testimony was necessary for a proper determination of the case.
The case did not reach the Full Commission for oral argument until July 24, 2002, some 16 months after plaintiff was treated by Dr. Suh.
Based on an incomplete record, the Deputy Commissioner and a majority of the Full Commission found that plaintiff was able to return to work at the end of June 2000. The proffered medical records of Dr. Suh indicate that plaintiff was still unable to earn wages on May 14, 2001.
The case must be remanded for a proper determination from all pertinent evidence, including the deposition and medical records of Dr. Suh.
After the first draft of this dissent, the majority re-wrote their opinion to state their justification for excluding Dr. Suh's deposition. Among other things, they said:
 The issue in this case is whether plaintiff sustained an injury and if so, the extent of injury, from the accident that occurred on October 22, 1999. Plaintiff was seen by numerous physicians, some of his choice, after the accident. Because their treatment was closer in time, those physicians were in a better position to determine the extent of the injury than a physician who did not see plaintiff for more than a year and a half after the accident. Although it is anticipated that Dr. Suh may be able to render an opinion as to plaintiff's condition at the time of examination, this question is not in dispute.
Plaintiff's condition going forward is indeed in dispute. The majority finds (FOF 26) "Although Dr. Rawal's testimony supports plaintiff's complaints of back pain, the greater weight of the competent, credible evidence fails to show that the plaintiff's injury was as extensive either in severity or duration as the plaintiff alleges. In view of thelack of medical support based on credible evidence for his ongoingcomplaints, plaintiff's testimony regarding his present inability to work is not persuasive." (Emphasis added). Perhaps Dr. Suh's testimony would support such ongoing complaints. How does the majority know it would not?
FOF 28 finds that "by the end of June 2000, plaintiff's soft tissue injury had improved to the point that he did not seek further medical treatment." Apparently he did seek further medical treatment, casting doubt on the finding that his injury had improved. Else, why would he have seen Dr. Suh?
The majority has prejudged this case based upon incomplete evidence. The Industrial Commission has a responsibility to hear all of the relevant evidence up until the time of the Full Commission's decision, and if necessary to the ends of justice, beyond. Else why would the General Assembly have given the Commission the power to "receive further evidence?"
The Opinion and Award of the Full Commission must be vacated and the record must be reopened.
This 27th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER